## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3930 | **DATE** | 10/9/2002 |
| **CASE TITLE** | Fairbanks vs. Jenkins | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies plaintiff's motion to dismiss the counterclaim and strike the second affirmative defense (12-1,2) and also denies defendant's motion for identification and joinder of the real party in interest (14-1). The Court grants defendants leave to file, on or before 10/16/02, an amended answer and counterclaim as discussed above. Plaintiffs' answer to the amended counterclaim is to be filed by 10/23/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 16 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 26 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | OR / courtroom deputy's initials | 02 OCT 15 PM 3:38 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FAIRBANKS CAPITAL CORP., )
)
          **Plaintiff,** )
)
vs. )   Case No. 02 C 3930
)
JOHNNY JENKINS and ANNIE J. )
WESSON-JENKINS, )
)
          **Defendants.** )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In December 1999, defendants Johnny Jenkins and Annie Wesson-Jenkins obtained a loan from EquiCredit Corporation of Illinois and executed a promissory note in the amount of $86,250, secured by a mortgage on their home in Schaumburg, Illinois. In June 2002, plaintiff Fairbanks Capital Corp., alleging that it was "the owner and legal holder of said note, mortgage, and indebtedness," Cplt. ¶4(N), filed suit against the defendants, alleging that they had defaulted on their obligation to make payments on the loan and seeking to foreclose the mortgage. Fairbanks attached to its complaint copies of the note, mortgage, and an unsigned and undated document entitled "Assignment of Mortgage," stating that EquiCredit "does hereby sell, assign, transfer and set over" the mortgage to Fairbanks, for consideration of $10. The complaint alleged that the Court had jurisdiction by reason of diversity of citizenship; Fairbanks is a Utah corporation with its principal place of business in that state, the defendants are Illinois citizens, and the amount claimed to be due is just over $85,472. 28 U.S.C. §1332(a).

In their answer to the complaint, defendants stated that they had insufficient knowledge regarding the allegation that Fairbanks was the assignee of the note and mortgage, *see* Answer ¶4(N), a statement that operates as a denial of that allegation. *See* Fed. R. Civ. P. 8(b). They also noted that the copy of the purported assignment attached to the complaint was unexecuted and therefore denied its authenticity. Answer ¶3.

In their second affirmative defense, defendants alleged that at the time they executed the note and mortgage, they were not given proper notice of their right to rescind the transaction within three business days pursuant to the Truth in Lending Act, 15 U.S.C. §1635 & 12 C.F.R. §226.23, and that a document they signed at closing purporting to "confirm" that they were not rescinding was invalid because it improperly negated their right to rescind. Answer, Second Aff. Def. ¶¶9-13. Defendants further alleged that the legal effect of this was to give them an extended three-year period in which to rescind; they asserted that they have given notice of their election to rescind. *Id.* ¶14. Finally, defendants alleged that under 15 U.S.C. §1641, they are entitled to assert the right to rescind against any assignee of the loan. *Id.* ¶15.

Defendants also asserted a counterclaim which incorporates the allegations from their second affirmative defense. In the counterclaim, they restated their demand for rescission of the transaction and made a claim for damages and attorney's fees under the TILA against Fairbanks and NationsCredit Financial Services Corp., doing business as EquiCredit Corporation of Illinois.

Fairbanks has moved to strike the affirmative defense and to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). It argues that it is not the type of assignee against which a TILA claim may be asserted and that in any event it cannot be sued for damages under the TILA as an assignee because the alleged violation did not appear on the face of the pertinent

2

documents.[1] Defendants, in addition to objecting to Fairbanks' motion, have fired their own shot across Fairbanks' bow: based on Fairbanks' argument that it is not truly an assignee of the note and mortgage for purposes of TILA, defendants argue that Fairbanks is not the "real party in interest" and thus cannot prosecute the case on its own behalf under Fed. R. Civ. P. 17(a). They have asked the Court to require the joinder of NationsCredit d/b/a EquiCredit as the real party in interest and suggest that once that is done, diversity jurisdiction may be lacking.

**Discussion**

**1.     Plaintiff's motion to strike affirmative defense and dismiss counterclaim**

The TILA provides that a consumer has the right to rescind, among other transactions, a consumer credit transaction in which a security interest is retained on the consumer's home. This right extends until the third business day after the later of two dates: the date on which the transaction is consummated, or the date on which disclosure and rescission forms are delivered to the consumer. 15 U.S.C. §1635(a). If the creditor fails to deliver the forms, or fails to provide the required information, then the right to rescind extends for three years after the transaction's consummation. *Id.* §1635(f); 12 C.F.R. §226.23(a)(3). *See Smith v. Highland Bank,* 108 F.3d 1325, 1326 (11th Cir. 1997); *Taylor v. Domestic Remodeling, Inc.,* 97 F.3d 96, 98 (5th Cir. 1996). Defendants' allegation that their right to rescind was not properly disclosed is sufficient to bring into play, for purposes of the present motion at least, the extended three-year rescission

---

[1] Fairbanks' motion also included an argument that because defendants attached to their counterclaim an unsigned copy of the purported "confirmation" of non-rescission, that contradicted their allegation that they had actually signed such a document and thus undermined their TILA affirmative defense and counterclaim. The Court rejected this argument in open court without requiring defendants to respond to it; defendants contend that they were never given a copy of the executed document after they signed it.

3

period, which in this case would not expire until December 27, 2002. *See* Cplt. ¶4(B) (alleging that mortgage was executed on December 27, 1999). A consumer's right to rescind a transaction under the TILA is unaffected by an assignment: "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. §1641(c).

We first address defendants' affirmative defense of rescission. Defendants allege that they have made a demand for rescission, Answer ¶14, and even if they had not done so, their filing of an affirmative defense and counterclaim seeking rescission would be sufficient to constitute a demand for rescission under the TILA. *Taylor*, 97 F.3d at 100; *Eveland v. Star Bank, N.A.*, 976 F. Supp. 721, 726 (S.D. Ohio 1996); *Elliott v. ITT Corp.*, 764 F. Supp. 102, 105-06 (N.D. Ill. 1991).

Fairbanks argues that defendants are not entitled to assert rescission as an affirmative defense because Fairbanks is a mere "servicer" of the loan and thus is not an assignee within the meaning of §1641(c). A "servicer" is the person or entity "responsible for servicing [the] loan" – that is, for "receiving ... scheduled periodic payments from [the] borrower." 12 U.S.C. §2605(i)(2) & (3) (cross-referenced in 15 U.S.C. §1641(f)(3)). A servicer of a consumer debt is not considered an assignee for purposes of §1641 "unless the servicer is or was the owner of the obligation." 15 U.S.C. §1641(f)(1). And a servicer is not considered the owner of the obligation based on assignment made "solely for the administrative convenience of the servicer in servicing the obligation." *Id.* §1641(f)(2).

Fairbanks contends that it is a mere servicer and that the assignment was made solely for its administrative convenience in servicing the loan. This contention is contradicted by

4

Fairbanks' own complaint. In the complaint, Fairbanks alleges, without qualification, that it is "the owner and legal holder of [the] note, mortgage, and indebtedness." Cplt. ¶4(N). A court may treat an admission in a party's pleading as a binding admission. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000); *Taylor v. Monsanto Co.*, 150 F.3d 806, 809 (7th Cir. 1998). Though it is premature to determine whether this admission will conclusively bind Fairbanks for the remainder of this litigation, the allegation is sufficient, for present purposes, to defeat Fairbanks' contention that it is a mere servicer not liable under §1641: a servicer which owns the debt is considered an assignee for purposes of §1641. 15 U.S.C. §1641(f)(1).

The Court also rejects Fairbanks' argument that it is clear that the assignment was made "solely for [its] administrative convenience," which if so would preclude it from being treated as the "owner" of the debt. *Id.* §1641(f)(2). Defendants have squarely alleged that Fairbanks is an assignee of the loan – an allegation sufficient to permit them to assert rescission against Fairbanks, *see* 15 U.S.C. §1641(c) – and they allege nothing that hints at the possibility that the assignment was made solely for Fairbanks' administrative convenience. In the present context, the Court must take defendants' allegations as true and can grant Fairbanks' motion only if it appears beyond doubt that defendants can prove no set of facts consistent with their allegations that would sustain their counterclaim and defense. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984) (motion to dismiss); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (same); *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (motion to strike affirmative defense). Fairbanks points out that the assignment, which is attached to Fairbanks' complaint, recites that it was made in return for payment of $10, and argues that the low price can only be consistent with

5

an administrative convenience-type assignment. But defendants have denied the authenticity of the assignment. It would be inappropriate for the Court to rely on a document of disputed authenticity without converting Fairbanks' motion to a motion for summary judgment, *see* Fed. R. Civ. P. 12(b), a step which Fairbanks has not urged and which the Court would not do in any event without allowing defendants an opportunity for discovery.

Moreover, without knowing more about the transaction between the lender and Fairbanks, the inference that Fairbanks seeks to have the Court draw from the amount of consideration recited in the assignment document is certainly debatable: it is not unusual for assignments – like releases – to recite token consideration for purposes of form even if more substantial consideration was actually provided. In addition, the fact that Fairbanks brought suit in its own name as the "owner" of the note indicates that the assignment, at least as of the time Fairbanks filed suit, was not merely a matter of "administrative convenience." Indeed, Fairbanks has cited no authority suggesting that rescission cannot be demanded of an assignee that has the legal status necessary to file suit against the debtor.

In sum, on the present state of the pleadings the Court is unable to say that there is no set of facts under which Fairbanks would be considered an assignee obligated under §1641(c) to honor a proper demand for rescission. The Court therefore denies Fairbanks' motion to strike defendants' second affirmative defense.

Defendants' counterclaim for damages and attorney's fees is based on two alleged TILA violations: the alleged improper undermining of defendants' right to rescind at the time the loan was made, and Fairbanks' failure to rescind the transaction following defendants' demand for rescission. We begin with the former.

The TILA provides that an action for a violation involving a consumer loan secured by real property may be maintained against an assignee "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement," except as specifically provided in the statute. 15 U.S.C. §1641(e)(1). According to Fairbanks, the alleged deprivation of the right to rescind does not satisfy that test. Under the TILA, a violation is apparent on the face of the disclosure statement if "the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, *or any other disclosure of disbursement.*" *Id.* §1641(e)(2) (emphasis added). Defendants contend that documents likely to have been in the credit file transferred to Fairbanks as part of the assignment included instructions to the closing agent which disclosed the disbursements and directed return of the closing package, including the allegedly improper "confirmation" of non-rescission, to the lender. Response to Motion to Dismiss, p. 11. Though defendants' counterclaim currently includes no allegation that the alleged TILA violation was apparent from the disclosure statement – an allegation that is, in the Court's view, necessary to maintain this type of claim against an assignee – the Court is confident based on defendants' response to the motion to dismiss that if given the opportunity, they would amend the counterclaim to include such an allegation.

Defendants' other claim is that after the assignment, Fairbanks directly violated the TILA by refusing to honor defendants' demand for rescission. The statute requires a creditor to take steps to rescind the transaction within twenty days of receipt of the consumer's demand for rescission, 15 U.S.C. §1635(b), and as noted earlier this obligation applies to assignees like Fairbanks. *Id.* §1641(c). Because Fairbanks failed to perform the steps required by §1635(b),

7

defendants have set forth the predicate for a claim against Fairbanks.[2] In their counterclaim, defendants seek damages and attorney's fees based on this claim.

Fairbanks argues that a consumer cannot obtain damages or attorney's fees against an assignee for failure to rescind a transaction. It relies on §1640(a), the TILA provision that generally describes the remedies available for violations of the statute. Section 1640(a) provides that "any *creditor* who fails to comply with any requirement imposed under [the TILA], including any requirement under section 1635 of this title," is liable for actual damages, statutory damages, and attorney's fees. 15 U.S.C. §1640(a) (emphasis added). The statute defines the term "creditor" as denoting the entity to which the debt "is *initially* payable on the face of the evidence of indebtedness," *id.* §1602(f) (emphasis added), which in this case was EquiCredit, not Fairbanks. Thus, Fairbanks argues, these remedies are not available against an assignee.

In *Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994), the court adopted Fairbanks' proposed construction of the statute, concluding that an assignee cannot be held liable for damages and attorney's fees under TILA for failure to respond to a valid rescission notice because it is not a "creditor" within the meaning of §1640(a). *Id.* at 359. The court acknowledged that §1641(a) permits the imposition of civil liability against an assignee, but noted that the statute limits liability to violations that are apparent from the disclosure statement – which would not include a refusal to honor a request for rescission. *Id.* The court inferred

---

[2] The Court agrees with Fairbanks' argument that it is not *automatically* liable for its simple failure to comply with the rescission demand. Rescission under TILA is not automatic if the lender disputes the borrower's claim that rescission is warranted. *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 55 (1st Cir. 2002). The questions of whether rescission is appropriate, and whether Fairbanks is liable for failure to comply with the rescission demand, will be determined at a later point in this litigation; they cannot be determined on a motion to dismiss the counterclaim for failure to state a claim.

8

from this that "[a]pparently Congress did not wish to impose liability for damages and attorney's fees on an assignee who was not responsible for and who had no notice of TILA disclosure violations at the time of an assignment." *Id.* Though §1641(c) permits the consumer to rescind against an assignee, the court found no TILA provision permitting an award of damages or attorney's fees against an assignee for violating that provision. Thus, it concluded, "[r]escission is ... the only remedy against [the assignee] to which [the consumer] is entitled." *Id.*

This Court finds itself in respectful disagreement with *Brodo*. First of all, despite the use of the word "creditor" in §1640(a)'s introductory language, it is clear from §1640 taken as a whole that Congress intended for §1640(a)'s remedies to apply to any creditor *or assignee* that violates TILA's provisions. If *Brodo* were correct that the remedies described in §1640(a) were available only against the initiating creditor, there would have been no reason for Congress to include in §1640(b) and (c) defenses to liability "under this section" (i.e., §1640) that are available to "[a] creditor *or assignee*." 15 U.S.C. §1640(b) & (c) (emphasis added). In construing a statute, a court must read it as an integrated whole, so as to give meaning to all of its terms. *See, e.g., In re McFarland,* 84 F.3d 943, 946-47 (7th Cir. 1996) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 35-36 (1992)). *Brodo*'s reading of §1640(a) does not conform to that requirement.

Second, the text of §1640(a) itself indicates that attorney's fees, at least, are available from an assignee, and not just from the originating creditor, for violating a consumer's right to rescind. Section 1640(a)(3) provides that "in the case of any successful action to enforce the foregoing liability *or in any action in which a person is determined to have a right of rescission under section 1635 of this title,* the costs of the action, together with a reasonable attorney's fee

9

as determined by the court" is available. 15 U.S.C. §1640(a)(3) (emphasis added). Congress' use of the disjunctive indicates that liability for attorney's fees, at least, is not limited to actions against the creditor that initiated the loan but rather applies in "any action" in which a right to rescind is determined to exist.

Third, §1641(e)(1) and its counterpart §1641(a) plainly are not the exclusive means of imposing TILA liability on assignees. Both provisions state that a civil action may be brought against an assignee only for violations apparent from the disclosure statement "[e]xcept as otherwise specifically provided in this subchapter." 15 U.S.C. §1641(a) & (e)(1). But §1641(c) is such an exception: it specifically provides that a customer has the right to rescind against "*any assignee of the obligation,*" *id.* §1641(c) (emphasis added), and not just against the more limited set of assignees described in §1641(a) and (e)(1).

Finally, denying a consumer whose demand for rescission was refused by an assignee the ability to recover attorney's fees upon successful court action to enforce her TILA rights would undermine the policies underlying the TILA and its private enforcement mechanism. The TILA provides for an award of attorney's fees to a successful consumer in order to ensure that the consumer is made whole and to encourage enforcement of the statute's requirements. *Hannon v. Security National Bank,* 537 F.2d 327, 328 (9th Cir. 1976); *Corbett v. Keene Co-operative Bank,* 498 F. Supp. 800, 802 (D.N.H. 1980); *Liberty Loan Corp. v. Boyajian,* 407 F. Supp. 308, 311 (D.R.I. 1976); *Jones v. Seldon's Furniture Warehouse, Inc.,* 357 F. Supp. 886, 887 (E.D. Va. 1973). If consumers were precluded from recovering attorney's fees in this context, they would be chilled from seeking enforcement even in meritorious cases, as it is common for TILA plaintiffs to be persons of limited means who are unable to finance expensive litigation.

In sum, this Court disagrees with *Brodo* and concludes that an assignee that refuses to honor a proper demand for rescission may in fact be held liable under the TILA for attorney's fees. Certain of the reasons upon which this Court has relied to reach this conclusion likewise tend to support defendants' claim for statutory damages. But the Court need not make a definitive ruling in that regard in the present context, as Fairbanks' potential liability for attorney's fees is sufficient to permit defendants' counterclaim to survive.

For these reasons, the Court denies Fairbanks' motion to strike and its motion to dismiss.

2.  **Defendants' motion for joinder of real party in interest and disclosure of whether diversity jurisdiction exists.**

Based on Fairbanks' argument that it is merely an assignee for "administrative convenience" against which no TILA claims can be made, defendants argue that Fairbanks may not be the real party in interest in the case. Federal Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest," a requirement that exists to protect defendants from suit by persons who lack the ability to make final and binding decisions about the litigation as well as from a later action on the same claim by another party, and to ensure that the judgment entered in the case will have proper preclusive effect. *See, e.g., Gogolin & Stelter v. Karn's Auto Imports, Inc.*, 886 F.2d 100, 102 (5th Cir. 1989); *FDIC v. Main Hurdman*, 655 F. Supp. 259, 267 (E.D. Cal. 1987); *In re Tainan*, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985).

The Court has concluded that at least for present purposes, it appears that Fairbanks is in fact the owner of the note and mortgage on which the lawsuit is based. *See* Cplt. ¶4(N); *supra* at 5. For this reason, the Court does not currently perceive any significant doubt regarding whether

Fairbanks is the real party in interest. If discovery turns up evidence that creates such doubt, there will be ample time for the parties to raise the issue and for the Court to make the necessary determination. For these reasons, the Court denies defendants' motion for identification and joinder of the purported real party in interest.

### Conclusion

For the reasons stated above, the Court denies plaintiffs' motion to dismiss the counterclaim and strike the second affirmative defense [docket item 12-1 & 12-2] and also denies defendants' motion for identification and joinder of the real party in interest [docket item 14-1]. The Court grants defendants leave to file, on or before October 16, 2002, an amended answer and counterclaim as discussed above. Plaintiffs' answer to the amended counterclaim is to be filed by October 23, 2002.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 9, 2002